# In the United States Court of Federal Claims

|  |  |
|---|---|
| RUSSELL AND ELIZABETH REID FAMILY TRUST et al., | No. 24-cv-2018 |
| Plaintiffs, | Filed: September 3, 2025 |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

*Roger J. Marzulla* of Marzulla Law, LLC, Washington, D.C., argued for Plaintiffs. With him on the briefs were *Nancie G. Marzulla* and *Sebastian E. Ray* of Marzulla Law, LLC, Washington, D.C.

*Kyle Lyons-Burke* of the United States Department of Justice, Environment and Natural Resources Division, Washington, D.C. argued for Defendant. With him on the briefs was *Adam R.F. Gustafson*, Acting Assistant Attorney General, United States Department of Justice, Environment and Natural Resources Division.

## **MEMORANDUM AND ORDER**

Plaintiffs, the Russell and Elizabeth Reid Family Trust (the Trust) and co-trustees, Russell E. Reid and Elizabeth J. Reid, raise and sell beef cattle and run stables for recreational horseback riding on their ranch in the foothills of the Sierra Nevada Mountains. For more than 160 years, Plaintiffs and their predecessor-in-interest supplied water to their ranch by diverting water through a mile-long irrigation canal, which was constructed in 1857 and ran across federal forest land near Taylor Creek. Plaintiffs put this water to beneficial use until August 2021, when, in the process of creating a fire line, the United States Forest Service (Forest Service) bulldozed large trees, brush, and dirt into the canal, completely filling it. Plaintiffs allege that the Forest Service's actions, which "rendered the Trust's canal inoperative" and prevented Plaintiffs from "using and enjoying

the irrigation canal and appurtenant water," constitute a physical taking under the Fifth Amendment of the United States Constitution. ECF No. 1 (Complaint or Compl.) ¶ 9. Plaintiffs seek just compensation from the Government for the physical taking of two property rights: (i) an appropriative water right to divert and use the water from Taylor Creek and (ii) an easement for maintenance and use of the irrigation canal.

Pending before the Court is the Government's Motion to Dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (Rules). As explained further below, Plaintiffs have sufficiently pleaded that the Forest Service's actions constituted a physical taking under the Fifth Amendment. Accordingly, the Government's Motion is denied.

## FACTUAL BACKGROUND

Plaintiff's Complaint alleges the following facts, which the Court takes as true in adjudicating the present motion.[1] *Boyd v. United States*, 134 F.4th 1348, 1352 (Fed. Cir. 2025) (quoting *Jones v. United States*, 846 F.3d 1343, 1351 (Fed. Cir. 2017)).

## I.    Plaintiffs' Property Rights

Plaintiffs, the Trust and its co-trustees, Russell E. Reid and Elizabeth J. Reid, own a 125-acre ranch in Quincy, California in the foothills of the Sierra Nevada Mountains. Compl. at 1;[2] *see* ECF No. 9 (joining co-trustees as Plaintiffs). In 1857, Plaintiffs' predecessor-in-interest, B.F.

---

[1] The Government accepts Plaintiffs' allegations "solely for purposes of this Motion." Mot. at 6 n.2.

[2] Citations throughout this Memorandum and Order reference the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

Chandler, constructed a diversion into Taylor Creek to supply water to the ranch.[3]  Compl. ¶ 4. Plaintiffs' two alleged property rights relevant to this action—an appropriative water right and an easement—arise out of the original diversion constructed by Chandler in 1857.  Until 2021, Plaintiffs annually put the water diverted through the irrigation canal to beneficial use on the ranch, including to provide water to roughly 30 horses and 135 cattle that graze on the property and support the ranch's hay production.  *Id.* ¶ 8.

Plaintiffs' two asserted property rights, taken together, consist of "the water and the means of conveying that water to the Plaintiffs' property."  OA Tr. at 70:7−11.  *First*, the water: Plaintiffs allege that their land includes an appurtenant "first and prior right to continuously divert and use all of the waters of Taylor Creek for beneficial uses throughout the irrigation season on the ranch." Compl. ¶ 4.  *Second*, the easement: Plaintiffs allege that its land includes as an appurtenant right an easement for a mile-long irrigation canal across federal land.  *Id.* at 1, ¶ 5.  Plaintiffs allege that under the Ditch Rights-of-Way Act, 43 U.S.C. § 661, this easement is a "vested right-of-way for use and maintenance of this irrigation canal."  *Id.* ¶ 5.

## II.    The Forest Service Creates a Fire Line Near Taylor Creek

In August 2021, the Forest Service constructed a fire line.  *Id.* ¶ 9.  The Forest Service was "fully aware" of Plaintiffs' easement and irrigation canal, as the Forest Service marked the irrigation canal with red flags.  *Id.* ¶ 7.  To construct the fire line, the Forest Service used bulldozers and heavy equipment to clear brush and other debris.  *Id.* ¶ 9.

In this process, the Forest Service "push[ed] substantial amounts of debris"—including large trees, brush, and dirt—which "cover[ed]" and "totally filled" the irrigation canal.  *Id.*  "The

---

[3] At oral argument, Plaintiffs clarified that the reference to Chandler Creek in paragraph four of the Complaint is another name for Taylor Creek.  ECF No. 14 (OA Tr.) at 35:21−36:16.  For clarity and consistency, the Court refers to the creek as Taylor Creek.

Forest Service's actions have rendered [Plaintiffs'] canal inoperative and have destroyed [Plaintiffs'] ability to divert water from Taylor Creek under its vested and appurtenant water right, preventing the Trust from using and enjoying the irrigation canal and appurtenant water to provide water for the ranch and livestock." *Id.* at 1, ¶ 9.[4]

Additionally, the Forest Service "physically destroyed" their irrigation canal, exposing it to "physical damage and erosion from flooding and washout, which has degraded the canal's structure and damaged the drainage culverts, such that the canal can no longer be used for its intended purpose absent substantial restoration efforts." *Id.* at 1, ¶ 10.[5]

## PROCEDURAL BACKGROUND

On December 9, 2024, Plaintiff Russell and Elizabeth Reid Family Trust (the Trust) filed its Complaint in this action, alleging a permanent, physical taking of its (i) appropriative water right and (ii) easement for use and maintenance of an irrigation canal. *Id.* at 1, ¶ 5.[6] The Government moved to dismiss the Complaint on March 10, 2025. ECF No. 7 (Motion or Mot.). On April 7, 2025, Plaintiffs filed their Response to the Government's Motion. ECF No. 10 (Resp.). The Government filed its Reply in support of its Motion on April 21, 2025. ECF No. 11 (Reply).

---

[4] Plaintiffs allege that the irrigation canal is "totally" and "fundamentally filled" with debris. Compl. ¶ 9; OA Tr. at 35:12−15. It necessarily follows from this allegation that there is no water currently in the canal. *See* OA Tr. at 37:1−15. The Government suggested in its briefing and at oral argument that "water remains in the irrigation ditch, ready for Plaintiffs to use as soon as the ditch is cleared of debris." ECF No. 11 (Reply) at 10; OA Tr. at 11:2−12:5. However, at the motion to dismiss stage the Court must "take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." *Boyd*, 134 F.4th at 1352 (quoting *Jones*, 846 F.3d at 1351). Accordingly, for the purpose of resolving the present motion, the Court accepts as true Plaintiffs' allegation that there is no water currently in the irrigation canal.

[5] Plaintiffs estimate that such restoration efforts would cost $1 million and that it would take a month or more "to essentially re-dig th[e] canal." OA Tr. at 37:14−25; Resp. at 23.

[6] On March 31, 2025, Plaintiff moved to join Russell E. Reid and Elizabeth J. Reid—co-trustees of the Trust—as Plaintiffs. ECF No. 8. The Court granted the Motion. ECF No. 9.

This Court conducted oral argument on July 11, 2025.  Minute Entry, dated July 11, 2025; *see also* OA Tr. at 1.  After oral argument, and on consent of both parties, Plaintiffs filed a Sur-Reply on July 18, 2025, responding to arguments the Government raised for the first time in its Reply related to *United Water Conservation District v. United States*, 133 F.4th 1050 (Fed. Cir. 2025), which issued on April 2, 2025—after the Government had filed its Motion, but before Plaintiff filed its Response and the Government filed its Reply.  ECF No. 16 (Sur-Reply).  The Government's Motion to Dismiss is fully briefed and ripe for review.

## APPLICABLE LEGAL STANDARDS

### I.    Jurisdiction of the Court of Federal Claims

The Tucker Act grants this Court jurisdiction over claims for money damages based on (1) contracts between the plaintiff and the United States, (2) illegal exactions of money by the United States, or (3) money-mandating laws or constitutional provisions.  *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (citing 28 U.S.C. § 1491(a)(1)); *Martinez v. United States*, 333 F.3d 1295, 1302–03 (Fed. Cir. 2003) (en banc).  This jurisdiction includes claims for just compensation arising under the Takings Clause of the Fifth Amendment, which is, by its text, money-mandating.  *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008).[7]

### II.    Standard of Review: Rule 12(b)(6)

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  This Court "may properly grant a motion to dismiss under [Rule] 12(b)(6) when a complaint does not allege facts that show the plaintiff is entitled to the legal remedy sought."  *Steffen v. United*

---

[7] Neither party disputes the Court's jurisdiction over claims for just compensation arising under the Takings Clause.

*States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021) (citing *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002)).  At the motion to dismiss stage, this Court must "take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." *Boyd*, 134 F.4th at 1352 (quoting *Jones*, 846 F.3d at 1351).  The Court, however, need not "accept the asserted legal conclusions."  *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019).

## DISCUSSION

The issue before the Court is whether Plaintiffs' allegations that the Forest Service "totally" and "fundamentally filled" in their irrigation canal—preventing the flow of water to Plaintiffs' ranch—are sufficient to state a claim of a physical taking under the Fifth Amendment.  OA Tr. at 35:1020; Compl. ¶ 9.  The Court concludes that they are.  Plaintiffs have plausibly alleged a physical taking of both their (i) appropriative water right and (ii) easement, and accordingly, the Government's Motion to Dismiss is denied.

The Takings Clause of the Fifth Amendment prohibits the Government from taking private property for public use without just compensation.  U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation.").  The Federal Circuit has developed a two-step approach to takings claims.  *Boise Cascade Corp. v. United States*, 296 F.3d 1339, 1343 (Fed. Cir. 2002); *Fishermen's Finest, Inc. v. United States*, 59 F.4th 1269, 1274–75 (Fed. Cir. 2023).  *First*, "a court determines whether the plaintiff possesses a valid interest in the property affected by the governmental action."  *Boise Cascade Corp.*, 296 F.3d at 1343.  *Second*, if the plaintiff does have such an interest, the court determines whether the government action at issue constituted a taking of that property right.  *Acceptance Ins. Cos. v. United States*, 583 F.3d 849, 854 (Fed. Cir. 2009).  A court cannot reach the second step of the analysis without first determining

that the plaintiff had a cognizable property interest. *Id.* (quoting *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1213 (Fed. Cir. 2005)).

When determining the scope of the plaintiff's property right at step one, "existing rules and understandings and background principles derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights." *Fishermen's Finest*, 59 F.4th at 1275 (quoting *Acceptance Ins. Cos.*, 583 F.3d at 857). Put differently, "[t]he property rights protected by the Takings Clause are creatures of state law." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 155 (2021); *see, e.g.*, *Casitas Mun. Water Dist. v. United States*, 708 F.3d 1340, 1353−56 (Fed. Cir. 2013) (*Casitas II*) (analyzing the scope of appellant's property interest under California law). Only "persons with a valid property interest at the time of the taking are entitled to compensation." *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001).

At step two, the Court determines whether the relevant government action constituted a taking of the plaintiff's property right. *Fisherman's Finest*, 59 F.4th at 1275 (citing *Acceptance Ins. Cos.*, 583 F.3d at 854). Such a taking can either be physical or regulatory in nature. *United Water*, 133 F.4th at 1055 (citing *Casitas Mun. Water Dist. v. United States*, 543 F.3d 1276, 1288–89 (Fed. Cir. 2008) (*Casitas I*)). The difference between physical and regulatory takings is not "whether the government action at issue comes garbed as a regulation (or statute, or ordinance, or miscellaneous decree)." *Cedar Point*, 594 U.S. at 149. Rather, the relevant question is "whether the government has physically taken property for itself or someone else—by whatever means" (a physical taking) or "has instead restricted a property owner's ability to use his own property" (a regulatory taking). *Id.*; *see also CRV Enters., Inc. v. United States*, 626 F.3d 1241, 1246 (Fed. Cir. 2010) (explaining that regulatory takings "involve restrictions on the use of the property").

Here, Plaintiffs allege only a physical taking.  Compl. at 1.  "A taking that is physical in nature is the 'paradigmatic taking' and occurs by 'a direct government appropriation or [a] physical invasion of private property.'"  *United Water*, 133 F.4th at 1055 (quoting *Casitas I*, 543 F.3d at 1288); *Washoe Cnty. v. United States*, 319 F.3d 1320, 1326 (Fed. Cir. 2003) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 (1992)) ("A physical taking generally occurs when the government directly appropriates private property or engages in the functional equivalent of a 'practical ouster of [the owner's] possession.'" (alteration in original)).  To prove a physical taking, a plaintiff must show that "the government has physically taken property for itself or someone else—by whatever means."  *Cedar Point*, 594 U.S. at 149.  In other words, the question is whether the Government has *appropriated* the property right—which means to "*tak[e]* as one's own."  *Id.* at 158 (quoting 1 Oxford English Dictionary 587 (2d ed. 1989)) (emphasis in original).  If the Government has done so, it "must pay for what it takes."  *Id.* at 148 (citing *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002)); *Tahoe-Sierra*, 535 U.S. at 322 ("When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner.").

As explained further below, Plaintiffs allege that they have appurtenant rights (i) to "continuously divert and use all of the waters of Taylor Creek for beneficial uses throughout the irrigation season on the ranch," Compl. ¶ 4, and (ii) to an easement "for use and maintenance" of the irrigation canal, *id.* ¶ 5.  The Court holds that Plaintiffs' allegations that the Forest Service "totally" and "fundamentally filled" the irrigation canal—thereby preventing the flow of water to Plaintiffs' ranch—are sufficient to state a claim of a physical taking of both property rights.  OA Tr. at 35:1020; Compl. ¶ 9.

I.    **Plaintiffs Have Plausibly Alleged a Physical Taking of Their Water Right.**

    A.    **The Scope of Plaintiffs' Water Right.**

Plaintiffs allege that their land "includes as an appurtenance the first and prior right to continuously divert and use all of the waters of Taylor Creek for beneficial uses throughout the irrigation season on the ranch." *Id.* ¶ 4.  For purposes of resolving this Motion, the Government does not dispute that Plaintiffs possess the right to use and divert the water of Taylor Creek.  OA Tr. at 10:8–10 (Government Counsel: "Your Honor, we don't dispute that Plaintiffs have the right to divert and use water from Taylor Creek."); Mot. at 6 ("The Trust owns a 125-acre ranch in Quincy, California which includes the right to divert and use water from Taylor Creek."); *see supra* note 1.  Therefore, for the purpose of resolving this motion, Plaintiffs' appropriative water right consists of the "first and prior right to continuously divert and use all of the waters of Taylor Creek for beneficial uses throughout the irrigation season on the ranch."  Compl. ¶ 4.

    B.    **Plaintiffs Have Plausibly Alleged That the Creation of the Fire Line Constituted a Physical Taking of Their Appropriative Water Right.**

The Government contends that Plaintiffs have failed to state a claim of a physical taking of Plaintiffs' appropriative water right for two reasons.  *First*, the Government argues that the Forest Service's prevention of the diversion of water to Plaintiffs' ranch is not a physical taking under *United Water*, because the Government did not appropriate any water that Plaintiffs had already diverted to their ranch.  Reply at 8–10.  *Second*, the Government asserts that Plaintiffs have not alleged a physical occupation of their property by the Government, which it contends is necessary to state a physical taking claim.  Mot. at 12–14.  For the reasons explained below, the Court rejects each of the Government's arguments.

1.    **Plaintiffs Have Plausibly Alleged That Their Predecessor-in-Interest Acquired a Vested Water Right by Appropriation in 1857.**

The Government contends that because the Forest Service simply blocked water before Plaintiffs diverted that particular water to their ranch—and did not "appropriate any water Plaintiffs had already diverted to [their] ranch"— Plaintiffs have failed to state a claim of a physical taking under the Federal Circuit's recent opinion in *United Water Conservation District v. United States*. Reply at 8−10. Said differently, in the Government's view, only the "particular molecules of water" that reach Plaintiffs' ranch can be physically taken by the Government. OA Tr. at 60:12–19; Reply at 8–10. This argument is unavailing.

As noted, Plaintiffs allege that their predecessor-in-interest appropriated the "first and prior right to continuously divert and use all of the waters of Taylor Creek for beneficial uses throughout the irrigation season on the ranch." Compl. ¶ 4. The Supreme Court has explained that:

> To appropriate water means to take and divert a specified quantity thereof and put it to beneficial use in accordance with the laws of the state where such water is found, and, by so doing, to acquire under such laws, a vested right to take and divert from the same source, and to use and consume the same quantity of water annually forever, subject only to the right of prior appropriations.[8]

*Arizona*, 283 U.S. at 459. Indeed, "once rights to use water are acquired, they become vested property rights. As such, they cannot be infringed by others or taken by government action without due process and just compensation." *Casitas II*, 708 F.3d at 1354 (quoting *United States v. State Water Res. Control Bd.*, 227 Cal. Rptr. 161, 168 (Cal. Ct. App. 1986)). In 1857, when Plaintiffs' predecessor-in-interest constructed the diversion to Taylor Creek, California law established that

---

[8] This specific passage from *Arizona v. California* summarizes a general principle underlying the prior appropriation doctrine, which is applicable in any state, such as California, that applies the prior appropriation doctrine. *Arizona v. California*, 283 U.S. 423, 459 (1931); *People v. Shirokow*, 26 Cal. 3d 301, 307 (1980) ("California operates under the so-called dual system of water rights which recognizes both the appropriation and the riparian doctrines.").

rights to appropriate water were acquired by diverting water and putting it to beneficial use.[9]

*People v. Shirokow*, 26 Cal. 3d 301, 307−08 (1980); *State Water Res. Control Bd.*, 227 Cal. Rptr. at 168 ("Initially, rights to appropriate water were acquired by *actual diversion and use of the water*." (emphasis added)); *see also United Water*, 133 F.4th at 1056–57 ("[U]nder the prior appropriation doctrine . . . water rights are acquired by *diverting water and applying it for a beneficial purpose*." (emphasis added) (quoting *Colorado v. New Mexico*, 459 U.S. 176, 179 n.4 (1982))).  The three elements required to acquire or "perfect[] an appropriative water right" are:

>    (1) [a]n intent to apply it to some existing or contemplated beneficial use;
>
>    (2) an actual diversion from the natural channel by some mode sufficient for the purpose; and
>
>    (3) an application of the water within a reasonable time to some beneficial use.

*Simons v. Inyo Cerro Gordo Mining & Power Co.*, 192 P. 144, 150 (Cal. Ct. App. 1920); *see also id.* at 151 ("Actual diversion (the taking of possession) creates the right; actual use (the amount in possession) measures the right."); *Casitas Mun. Water Dist. v. United States*, 102 Fed. Cl. 443, 453 n.12 (2011) (quoting *Cal. Trout, Inc. v. State Water Res. Control Bd.*, 153 Cal. Rptr. 672, 674−75 (1979), in turn quoting Wells A. Hutchins, The California Law of Water Rights 108 (1956)), *aff'd*, 708 F.3d 1340 (Fed. Cir. 2013).

The allegations in the Complaint establish all three of these elements.  *First*, Plaintiffs' predecessor-in-interest's action of constructing a diversion from Taylor Creek to his ranch plainly evinced an intent to apply the water to a beneficial use on the ranch.  Compl. ¶ 4.  *Second*, Plaintiffs expressly allege that their predecessor-in-interest did in fact create such a diversion.  *Id.*  *Third*,

---

[9] This method of appropriation has since been superseded.  California law now provides that "the exclusive means of acquiring appropriative rights" is through a permitting procedure.  *Shirokow*, 26 Cal. 3d at 308; *State Water Res. Control Bd.*, 227 Cal. Rptr. at 168−69.

Plaintiffs allege that "[c]ontinuously since 1857" the diversion (the irrigation canal) has been used to supply water to the ranch, and that the water has been put to beneficial use on the ranch— specifically "for providing water to approximately 30 horses and 135 cattle that that graze on the property and support[ing] the ranch's hay production." *Id.* ¶¶ 5–6, 8.  Therefore, the Complaint plausibly alleges that Plaintiffs have perfected and acquired the right "to use and consume the same quantity of water annually forever, subject only to the right of prior appropriations."[10]  *Arizona*, 283 U.S. at 459.  Indeed, Defendant concedes that Plaintiffs' use right vested in 1857.  OA Tr. at 60:5–9 (Government counsel: "[W]e do not contest and we concede, based on the complaint, that [Plaintiffs'] right to divert the water occurred back in the mid-1800s when they created the ditch and started using the water.").

As noted, although the Government concedes that Plaintiffs' right to use and divert water vested in 1857, the Government contends that only the "particular molecules of water" that reach Plaintiffs' ranch can be physically taken by the Government.  *Id.* at 60:12–19; Reply at 9 (quoting *United Water*, 131 F.4th at 1058) ("As the Federal Circuit has recently explained, an appropriative water rights holder—like Plaintiffs—'needed to have physically diverted water for its property right to vest and thus become subject to a physical taking.'")  However, the Government's suggested reading of *United Water* is inconsistent with the Federal Circuit's earlier analysis, in the same opinion, of *International Paper*—a case in which, the Government agrees, the Supreme Court held that a blockage or "stoppage" of water before it reached International Paper's mill was

---

[10] Plaintiffs specifically allege that their right is unencumbered, as are no prior (or "senior") appropriators.  Compl. ¶ 1 (characterizing Plaintiffs' right as the "*first and prior right* to continuously divert and use all of the waters of Taylor Creek for beneficial uses throughout the irrigation season upon the ranch." (emphasis added)).

a taking of an appropriative water right. *United Water*, 133 F.4th at 1057 (citing *Int'l Paper Co. v. United States*, 282 U.S. 399, 405–07 (1931)); OA Tr. at 14:9–17.

Further, the Government's argument runs up against two well-established principles. *First*, that "the right of property in water is usufructuary, and consists not so much of the fluid itself as the advantage of its use." *Casitas II*, 708 F.3d at 1353–54 (quoting *Eddy v. Simpson*, 3 Cal. 249, 252 (1853)); *see also* Cal. Water Code § 102 (West 2025) ("All water within the State is the property of the people of the State, but the right to the use of water may be acquired by appropriation in the manner provided by law."). *Second*, that "once rights to use water are acquired . . . they cannot be infringed by others or taken by government action without due process and just compensation." *Casitas II*, 708 F.3d at 1354 (quoting *State Water Res. Control Bd.*, 227 Cal. Rptr. at 168). The Federal Circuit has explained that "although a private entity cannot own water itself, the *right to use* that water is considered private property." *Id.* (emphasis added). Here, Plaintiffs clearly allege that they have a vested right to use water—not a vested right to particular molecules of water. Compl. ¶ 4. Plaintiffs further allege, and the Government agrees, that this right was acquired and vested in 1857. *Id.* ¶¶ 4–6, 8; Resp. at 16–17 ("The complaint amply alleges that Reid owns an appropriative water right to the water of Taylor Creek, with a priority date of 1857."); OA Tr. at 60:5–9 (Government counsel: "[W]e do not contest and we concede, based on the complaint, that [Plaintiffs'] right to divert the water occurred back in the mid-1800s when they created the ditch and started using the water."). And "once rights to use water are acquired . . . they cannot be infringed by others or taken by government action without due process and just compensation." *Casitas II*, 708 F.3d at 1354 (quoting *State Water Res. Control Bd.*, 227 Cal. Rptr. at 168). Accordingly, the Court rejects the Government's argument that only the "particular molecules of water" that reach Plaintiffs' ranch can be physically taken by the Government.

2.      **Plaintiffs' Allegations That the Government Destroyed and Completely Cut Off Their Water Access Are Sufficient to State a Physical Taking Claim.**

Next, the Government advances a related argument—that for a physical taking to occur, there must be a physical invasion or occupation of a plaintiff's property. Mot. at 12–14 ("The *sine qua non* of a physical taking is physical occupation of a *plaintiff's property*."). According to the Government, Plaintiffs have not alleged a physical taking because "the fire line never encroached on [Plaintiffs'] property," as the fire line was created on federal land. *Id.* at 12. Plaintiffs respond that the blockage of the irrigation canal constitutes a physical taking because under Federal Circuit and Supreme Court precedent, "the Government's complete cutoff of an appropriative water right is a physical taking." Resp. at 19−23; *see also* OA Tr. at 40:4–8 (Plaintiffs' Counsel: "A water right is the right to use the water. And when the Government interferes with or prohibits, physically or otherwise, that ability to use the water, that is the taking of a water right.").

At bottom, the dispute between the parties is whether, to state a claim of a physical taking here, Plaintiffs must show (i) that there was physical occupation of Plaintiffs' property by the Government (the Government's view), Mot. at 12–14; or (ii) that the Government completely cut off Plaintiffs' access to the water (Plaintiffs' view), Resp. at 19–23. The Court agrees with Plaintiffs. For the reasons stated below, the Court concludes that Plaintiffs' allegations that the Government destroyed and completely cut off their water access are sufficient to state a claim of a physical taking.

This case involves a water *use* right. Compl. ¶ 4; Resp. at 15. As Plaintiffs correctly explain, a water use right is fundamentally different from ownership of other property interests, as it is "chiefly a right of use, not a right of possession or other right associated with land ownership." *Klamath Irr. Dist. v. United States*, 635 F.3d 505, 518 n.8 (Fed. Cir. 2011); *see* Resp. at 20–21 ("The Government's argument that there can be no taking because the Forest Service did not enter

Reid's land fails to acknowledge the difference between solid land and moving, flowing water."). And in the context of water rights, the Federal Circuit has expressly held that physical occupation of a plaintiff's land is not an essential condition of a physical taking. *CRV Enters.*, 626 F.3d at 1246–47 ("[A]ction not occurring on a plaintiff's land can still lead to a physical taking of water rights."); *see also Washoe Cnty.*, 319 F.3d at 1326 (first citing *Dugan v. Rank*, 372 U.S. 609, 625–26 (1963); then citing *Int'l Paper*, 282 U.S. at 407–08; and then citing *Tulare Lake Basin Water Storage Dist. v. United States,* 49 Fed. Cl. 313, 320 (2001)) ("In the context of water rights, courts have recognized a physical taking where the government has physically diverted water for its own consumptive use or decreased the amount of water accessible by the owner of the water rights."). Accordingly, "prior water rights cases finding a physical taking involved instances where the 'United States physically diverted the water, or caused water to be diverted away from the plaintiffs' property' such that water was removed entirely and the plaintiff[']s 'right to use that water, [was] forever gone.'" *CRV Enters.*, 626 F.3d at 1247 (second alteration in original) (quoting *Casitas I*, 543 F.3d at 1290, 1296).

The Supreme Court has found a taking of water rights where the Government prevented the diversion of water to a paper mill—completely cutting off the right holder's access to the water it had the right to use, *Int'l Paper*, 282 U.S. at 404–07,[11] and where the Government's storage of water behind the Friant Dam left insufficient water to supply water to landowners with riparian water rights, *Dugan*, 372 U.S. at 625–26; *United States v. Gerlach Livestock Co.*, 339 U.S. 725, 727−30 (1950) (same). In *Dugan*, the Court reasoned that the Government had appropriated the

---

[11] At oral argument, the Government agreed that in *International Paper*, the Government blocked water from being diverted to the plaintiff's mill rather than a diversion of water that had already reached the mill. OA Tr. at 14:9−22.

landowners' property by acting "'with the purpose and effect of subordinating' [the landowners'] water rights" to the Government's uses "whenever it saw fit."  372 U.S. at 625 (noting that "[a] seizure of water rights need not necessarily be a physical invasion of land").  In *International Paper*, the Court explained that the "petitioner's right was to the use of the water; and when *all the water that it used* was withdrawn from the petitioner's mill and turned elsewhere by government requisition for the production of power it is hard to see what more the Government could do to take the use."  282 U.S. at 407 (emphasis added).[12]

The Federal Circuit has expressly characterized *International Paper* as finding a "direct physical appropriation because International Paper's right to the water was *completely cut off*." *United Water*, 133 F.4th at 1057 (emphasis added) (citing *Int'l Paper*, 282 U.S. at 405–07).  As noted, whether the Government has appropriated a property right is the touchstone of the physical takings analysis.  *Cedar Point*, 594 U.S. at 149, 158 (quoting 1 Oxford English Dictionary 587 (2d ed. 1989)).  Here, Plaintiffs specifically allege that the Forest Service's actions led to the "cutting off [of their] entire water supply."  Resp. at 20 ("By physically blocking the canal through which the Taylor Creek water could flow to Reid's ranch, cutting off Reid's entire water supply, the Government physically took Reid's water right, just as it did in *International Paper*."); Compl. ¶ 9 "The Forest Service's actions have . . . destroyed [Plaintiffs'] ability to divert water from Taylor

---

[12] *International Paper*, *Gerlach*, and *Dugan* predated *Penn Central Transportation Co. v. City of New York*, which established a balancing test that applies to regulatory takings.  438 U.S. 104 (1978).  However, the Federal Circuit has specifically characterized the government actions in *International Paper* and *Dugan* as "appropriations"—which are plainly physical takings based on the framework articulated by the Supreme Court in *Cedar Point*.  *Casitas I*, 543 F.3d at 1289 (citing *Int'l Paper*, 282 U.S. at 404–06) ("The Supreme Court found that the government directly appropriated water that International Paper had a right to use."); *id.* at 1290 (citing *Dugan*, 372 U.S. at 614, 616) ("The Supreme Court . . . analyzed the government's physical appropriation of water as a physical taking."); *Cedar Point*, 594 U.S. at 153 ("To begin with, we have held that a physical appropriation is a taking whether it is permanent or temporary.").

Creek under its vested and appurtenant water right, preventing [Plaintiffs] from using and enjoying the irrigation canal and appurtenant water to provide water for the ranch and livestock.").[13]  In doing so, the Government appropriated Plaintiffs' right to use the water of Taylor Creek.  By contrast, in *United Water*, because there was no such appropriation, the Federal Circuit held that United's claim was properly analyzed as a regulatory, as opposed to a physical, taking.  133 F.4th at 1057–58 ("[Plaintiff] United has not alleged that the government completely cut off its access to the water or caused it to return any volume of water it had previously diverted to its possession in the Freeman Canal.").  The relevant government action in *United Water* (the implementation of "operating measures" or regulatory restrictions under the Endangered Species Act) resulted in less water flowing to United's canal, but did not compel the return of water already in United's possession or completely cut off its access to water—as was the case in *International Paper* and in is the case in this action.  *Id.* at 1053–54, 1057–58.

The Government attempts to distinguish *International Paper* by arguing that there, "the government appropriated all the water capable of being diverted by the plaintiff and put that water

---

[13] The Government cites precedent from this Court and the Federal Circuit which states that "a physical taking of land occurs when the government occupies the property or '*requires* the landowner to submit to a physical occupation of its land.'"  *See Forest Props., Inc. v. United States*, 177 F.3d 1360, 1364 (Fed. Cir. 1999) (quoting *Yee v. City of Escondido*, 503 U.S. 519, 527 (1992)); *Martin v. United States*, 131 Fed. Cl. 648, 651–52 (2017), *aff'd*, 894 F.3d 1356 (Fed. Cir. 2018). However, both of these cases predated *Cedar Point*, in which the Supreme Court clarified that "the essential question" in a Fifth Amendment takings analysis "is whether the government has physically taken property for itself or someone else—by whatever means . . . ."  *Cedar Point*, 594 U.S. at 149.  To be sure, the Government could do so via a physical occupation of property.  *Id.* at 148–49.  However, that is not the only means by which the Government can physically take private property, and the analysis depends on the underlying property right at issue.  In any event, both cases presented a different question than the one presently before this Court.  *Forest Props.*, 177 F.3d at 1362, 1364–67 (analyzing whether a denial of a permit to dredge and fill a underwater lake bottom property as a regulatory taking, and concluding no taking had occurred); *Martin*, 131 Fed. Cl. at 651–53 (concluding that landowners' claims that the Forest Service had effected a taking of their easements to access their property located within federal forest land by requiring them apply for a permit before repairing damaged roads was properly analyzed as a regulatory taking).

to use generating power for the war effort during the First World War." Reply at 10. By contrast, here, Defendant argues that the water "has not been taken by the Government; it's been blocked. . . . The Government is not using that water for any purpose." OA Tr. at 15:2–10; Reply at 10; *see also* OA Tr. at 56:7−13 (noting that the Government was putting the water to its own use in *Gerlach* and *Dugan*). This argument is unavailing.

Here, although the Government did not repurpose the water to create the fire line, it nevertheless appropriated, or took for itself, Plaintiffs' *right to use* the water in order to create the fire line. In other words, the taking (the blockage of the irrigation canal) was for a public purpose (the creation of the fire line). Compl. ¶ 9 ("In August 2021, the Forest Service physically took [Plaintiffs'] property rights by constructing a fire line."); *see* Mot. at 12 ("[T]he fire line was, by its very nature, intended to prevent the spread of a forest fire."); *see also Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1356 (Fed. Cir. 2003) ("[T]o constitute a taking, an invasion must appropriate a benefit to the government at the expense of the property owner, or at least preempt the owner[']s right to enjoy his property for an extended period of time . . . .").

*         *         *         *         *

In sum, to state a claim of a physical taking of water rights, "[t]here must be a physical appropriation or destruction of the water, not just a restriction on the use of the water that remains in place." *CRV Enters.*, 626 F.3d at 1248. Here, the Complaint alleges that such an appropriation or destruction has occurred.

Plaintiffs allege that they have a vested appropriative water right to use the water of Taylor Creek. Compl. ¶¶ 4–6, 8; *Casitas II*, 708 F.3d at 1354 (quoting *State Water Res. Control Bd.*, 227 Cal. Rptr. at 168). Plaintiffs further allege that no water has flowed to their ranch since August 2021, and therefore, that they can no longer use any water from Taylor Creek. Compl. at 1, ¶¶ 9–

10; OA Tr. at 36:17–20.  In other words, their use right was taken by the Government.  Due to the debris bulldozed into the irrigation canal by the Forest Service, Plaintiffs' right to use the water of Taylor Creek is "forever gone."  *Casitas I*, 543 F.3d at 1294; OA Tr. at 28:16–19 (Government counsel: "Water would not have stopped flowing through the irrigation ditch if the Government had not pushed debris into the canal – the ditch.").  The Government has, in effect, taken for itself Plaintiffs' right to use that water by completely blocking Plaintiffs' means of diverting the water. It is as if that water were destroyed, or "the government ha[d] physically appropriated [Plaintiffs'] water rights by removing water entirely."  *CRV Enters.*, 626 F.3d at 1248.  Accordingly, the Court concludes that Plaintiffs have stated a physical taking claim as to their water right.

**II.    Plaintiffs Have Plausibly Alleged a Physical Taking of Their Easement.**

**A.    The Scope of Plaintiffs' Easement.**

Plaintiffs allege that they own, "as an appurtenant right[,] an easement for an irrigation ditch/canal across federal land" constructed by their predecessor-in-interest.  Compl. ¶ 5. Specifically, Plaintiffs allege that this easement is "a vested right-of-way for use and maintenance of this irrigation canal, as an appurtenance to the land."  *Id.*  For purposes of resolving this motion, the Government does not dispute that Plaintiffs have an easement to maintain and use the irrigation canal.  *See supra* note 1; *see also* Mot. at 6 n.3 (characterizing Plaintiffs' alleged easement as "the right for 'use and maintenance' of the irrigation ditch").  Therefore, for the purpose of resolving this motion, the Court defines Plaintiffs' easement as they undisputably allege: for the use and maintenance of the irrigational canal.[14]  Compl. ¶ 5.

---

[14] Plaintiffs allege that they hold this right under 43 U.S.C. § 661, the Ditch Rights-of-Way Act of 1866.  Compl. ¶ 5.  The Government, for its part, did not address the applicability of the Ditch Rights-of-Way Act in its briefing, and contended at oral argument that the Act is irrelevant. *See generally* Mot.; Reply; OA Tr. at 63:10–25.  For the purpose of resolving this Motion, the Court need not decide how the Ditch Rights-of-Way Act affects Plaintiffs' legal rights here, as the

**B.**     **Plaintiffs Have Plausibly Alleged That the Creation of the Fire Line Constituted a Physical Taking of Their Easement.**

The Government's argument with respect to Plaintiffs' easement is an extension of its position discussed above—that physical occupation of a plaintiff's property is necessary to state a claim of a physical taking.  Mot. at 12−14; Reply at 11−13; OA Tr. at 62:11−63:8.  Specifically, the Government contends that under California law, an easement is an incorporeal property right.  Because an incorporeal right cannot be physically invaded, the Government argues, an easement cannot be physically taken.  OA Tr. at 62:24−63:1 ("[B]ecause the activity was wholly on federal land and did not invade Plaintiffs' property at all, it cannot be a physical taking . . . .").

Plaintiffs counter that an easement is an interest in real property.  Resp. at 12, 24−25; OA 68:5−11 (citing *Simons v. Inyo Cerro Gordo Mining & Power Co.*, 192 P. 144, 150 (Cal. Ct. App. 1920)).   According to Plaintiffs, when the Government destroys an easement, or when the Government takes actions which "change or obstruct a plaintiff's exercise of the easement, rendering the easement ineffective," the Government effects a taking of an easement.  Resp. at 27−28 (first citing *United States v. Va. Elec. & Power Co.*, 365 U.S. 624 (1961); and then citing *Camp Far W. Irr. Dist. v. United States*, 68 F. Supp. 908, 915 (Ct. Cl. 1946)).  For the reasons explained below, the Court rejects the Government's argument, and holds that Plaintiffs have stated a claim of a physical taking of their easement.

The Court agrees, in part, with both parties regarding the nature of an easement: an easement is an incorporeal or intangible interest in real property under California law.  *Los Angeles Cnty. v. Wright*, 236 P.2d 892, 897 (Cal. Dist. Ct. App. 1951) ("An easement over land is real property and the holder of such easement is entitled to recover damages when such easement is

---

Government accepted—solely at the pleading stage—that Plaintiffs have an easement for use and maintenance of the irrigation canal.  *See supra* note 1.

taken or damaged for public use."); *Kazi v. State Farm Fire & Cas. Co.*, 15 P.3d 223, 229 (Cal. 2001) ("An easement is therefore an incorporeal or intangible property right that does not relate to physical objects but is instead imposed on the servient land to benefit the dominant tenement land."). Specifically, an easement is a limited right to use land for a particular purpose—it is one stick in the so-called bundle of sticks. *Romero v. Shih*, 541 P.3d 1112, 1118 (Cal. 2024) ("An easement . . . gives a nonpossessory and restricted right to a specific use or activity upon another's property, which right must be *less* than the right of ownership." (quoting *Mehdizadeh v. Mincer*, 54 Cal. Rptr. 2d 284, 290 (Cal. Ct. App. 1996)). It is an intangible, or incorporeal, property right, but it is also a right in real property. *Callahan v. Martin*, 43 P.2d 788, 793–94 (Cal. 1935) (citing Cooley's Blackstone, vol. 1 (4th ed.), p. 443) (explaining that incorporeal interests in land, such as easements, are recognized as real property in California); *Los Angeles Cnty.*, 236 P.2d at 897; *see also Kazi*, 15 P.3d at 229 ("[A]n easement is a nonpossessory 'interest in the land of another that gives its owner the right to use the land of another or to prevent the property owner from using his land.'" (quoting *Cnty. Sanitation Dist. v. Watson Land Co.*, 22 Cal. Rptr. 2d 117 (Cal. Ct. App. 1993)))).[15]

The Court disagrees, however, with the Government's contention that Plaintiffs' easement cannot be physically taken. Mot. at 12−14; Reply at 11−13; OA Tr. at 62:11−63:8. Indeed, "there can be no question that the Government's destruction of [an] easement would ordinarily constitute a taking of property within the Fifth Amendment." *Va. Elec. & Power Co.*, 365 U.S. at 627; *see also Cooper v. United States*, 827 F.2d 762, 763 (Fed. Cir. 1987) (citing *Virginia Electric & Power*

---

[15] *Kazi*'s later statement that an easement "represents a limited privilege to use the land of another for the benefit of the easement holder's land, but does not create an interest in the land itself," simply distinguishes an easement from full fee ownership, and does not conflict with the notion that an easement is an interest in real property. *See Kazi*, 15 P.3d at 229.

for the proposition that "the destruction of a property interest is a compensable taking within the meaning of the Fifth Amendment"). In *Virginia Electric & Power*, the Government acquired by condemnation a flowage easement over a tract of land. *Va. Elec. & Power Co.*, 365 U.S. at 624–25. Virginia Electric owned its own flowage easement within the easement the Government acquired. *Id.* at 625. Thus, the Government's imposition of its easement destroyed Virginia Electric's easement. *Id.* at 625–26. The Supreme Court concluded that a flowage easement is property that cannot be appropriated by the Government without compensating the owner of the easement. *Id.* at 628–31.

There, like here, the interest being taken by the Government was an easement. On the opposite side of the same coin, the Supreme Court has consistently held that the Government effects a taking when the Government imposes a servitude on a landowner's land—whether for plane flights over property, navigation, flooding, or some other purpose. *United States v. Causby*, 328 U.S. 256, 259, 266–67 (1946) (holding that by flying planes so low over the Causby farm as "barely to miss the tops of the trees" and terrify the Causby's chickens, the Army had imposed servitude upon the Causbys' land); *Kaiser Aetna*, 444 U.S. 164, 180 (1979) (holding that an appropriation of an easement—"imposition of the navigational servitude"—effected a physical taking); *Portsmouth Harbor Land & Hotel v. United States*, 260 U.S. 327, 329−30 (1922) (finding that by "set[ting] up heavy coast defence guns with the intention of firing them over the claimants' land and without the intent or ability to fire them except over that land," the Government imposed a servitude on the plaintiffs' land, which amounted to an appropriation and therefore a taking).

In those cases, the right holder owned the property rights in fee (i.e., possessed the full bundle of rights), and the Government took for itself an easement (a stick in the bundle). Here, Plaintiffs allege that they have an appurtenant right to an easement for use and maintenance of the

irrigation canal—which, Plaintiffs acknowledge, is only one stick in the bundle.  Compl. ¶ 5; OA

Tr. at 70:21–71:4.  By filling the irrigation canal in the process of creating the fire line, the

Government has wholly taken back that stick—the entirety of Plaintiffs' right.  Plaintiffs allege

that the filling of the irrigation canal "rendered [Plaintiffs'] canal inoperative" and "destroyed

[Plaintiffs'] ability to divert water from Taylor Creek."  Compl. ¶ 9.  Put simply, the Government

destroyed Plaintiffs' ability to use the canal for the very purpose for which their predecessor-in-

interest obtained the easement in the first place—to convey water to the ranch.  In sum, the

Complaint amply alleges that (i) Plaintiffs, although not the fee simple owners of the land, had an

easement—an incorporeal interest in real property—and (ii) that easement was physically taken

by the Government's actions.  *Nix v. United States*, 174 Fed. Cl. 260, 269 (2024) (citing *Cedar

Point*, 594 U.S. at 147–50) ("Even when the government does not formally take title to property,

if the government acquires one of the rights that makes up a property owner's metaphorical bundle

of sticks, it has taken a cognizable property interest and must pay compensation.").

     The Government cites *Warren v. City of Athens*, 411 F.3d 697, 705 (6th Cir. 2005), for the

proposition that "blocking access to a property is insufficient to state a physical taking."  Mot. at

13.  But *Warren* does not bolster the Government's argument.  That case was unlike this one, as it

was unclear on the face of the *Warren* complaint whether the plaintiffs even sought to raise a

taking claim.  Accordingly, the court began its analysis by quickly determining that the plaintiffs

had "not sought to base their action on the Just Compensation Clause of the Fifth Amendment."

*Warren*, 411 F.3d at 705.  In doing so, the court suggested that if the plaintiffs had alleged that

"the City placed its barriers or otherwise physically encroached *on their property*," the plaintiffs

would have alleged a claim of a physical taking.  The Government, however, over-reads this

23

passing statement, which cannot be understood to limit the different forms a physical taking might take. *Id.*

In sum, by bulldozing debris into Plaintiffs' irrigation canal, the Forest Service "totally" and "fundamentally filled" the irrigation canal and therefore destroyed Plaintiffs' easement and the flow of water to their land. OA Tr. at 35:1020; Compl. ¶ 9. Accordingly, the Court concludes that Plaintiffs' allegations regarding this easement are sufficient to state a claim of a physical taking. *Cedar Point*, 594 U.S. at 158 (holding that appropriation of the right to exclude—one "fundamental" stick in the bundle—is a *per se* physical taking).

## <u>CONCLUSION</u>

Courts must resolve Fifth Amendment takings cases based on their specific facts. *United States v. Pewee Coal Co.*, 341 U.S. 114, 117 n.4 (1951). "Resolution of each case, however, ultimately calls as much for the exercise of judgment as for the application of logic." *Andrus v. Allard*, 444 U.S. 51, 65 (1979). And in the Court's judgment, the facts alleged in this action more closely align to cases in which the Supreme Court and Federal Circuit have found a physical taking or an appropriation, than to cases involving a regulatory taking or no taking at all. *Compare Int'l Paper*, 282 U.S. 399, *and Casitas I*, 543 F.3d 1276; *and Dugan*, 372 U.S. 609, *and Va. Elec. & Power Co.*, 365 U.S. 624, *with United Water*, 133 F.4th 1050, *and Andrus*, 444 U.S. 51, 65 (finding that the government's prohibition on selling eagle parts was not a regulatory taking, as the relevant regulations did not "compel the surrender of the artifacts" and there was "no physical invasion or restraint upon them"), *and United States v. Central Eureka Mining Co.*, 357 U.S. 155, 165–66, 168 (1958) (concluding that a temporary closure of gold mines during World War II was not a taking because "the Government did not occupy, use, or in any manner take physical possession of the gold mines or of the equipment connected with them," and because "wartime economic restrictions, temporary in character, are insignificant when compared to the widespread

uncompensated loss of life and freedom of action which war"). The Takings Clause "was designed to bar [the] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). The Court finds that Plaintiffs allegations are sufficient—at least at the pleading stage—to state a claim of a physical taking of both their appropriative water right and easement. For the reasons explained above, the Government's Motion to Dismiss under Rule 12(b)(6) (ECF No. 7) is **DENIED**. The parties shall submit a Joint Status Report by no later than **September 17, 2025**, proposing a schedule for further proceedings. In the Joint Status Report, the parties shall also indicate whether they wish this Court to refer this action to Alternative Dispute Resolution.

IT IS SO ORDERED.



*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

September 3, 2025
Washington, D.C.